**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**CHRISTINE S.,**

                      **Plaintiff,**

**v.**

                                         **20-CV-282**

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**

## DECISION AND ORDER

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. No. 13.  Christine S. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 10, 11.  For the following reasons, Plaintiff's motion (Dkt. No. 10) is denied, and the Commissioner's motion (Dkt. No. 11) is granted.

## BACKGROUND

        On January 27, 2017, Plaintiff filed for Social Security Income ("SSI") alleging disability beginning on July 1, 2007, due to bipolar disorder, depression, anxiety

with panic attacks, and neuropathy.  Tr. at 185-90, 204.[1]  Plaintiff's claim was denied at the initial level and she requested review.  Tr. at 102-16.  Administrative Law Judge Andrew J. Solter ("the ALJ") conducted a hearing on October 15, 2018.  Tr. at 34-73. Plaintiff, who was represented by counsel, testified as did a vocational expert ("VE"). Tr. at 34-73.  On January 10, 2019, the ALJ issued a decision in which he found that Plaintiff was not under a disability as defined by the Act since January 27, 2017, and therefore, was not entitled to benefits.  Tr. at 12-28.  Plaintiff commenced the current action on March 9, 2020.  Dkt. No. 1.


## **LEGAL STANDARD**

**Disability Determination**

A person making a claim for Social Security benefits bears the ultimate burden of proving disability throughout the period for which benefits are sought.  *See* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982).  The claimant is disabled only if she shows that she is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 9.

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).  Congress places the burden upon the claimant to establish disability by requiring her to "furnish such medical and other evidence of the existence [of disability] as the Commissioner of Social Security may require."  42 U.S.C. § 1382c(a)(3)(H)(i). The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner.  20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

The Commissioner has established a five-step sequential evaluation for adjudicating disability claims set forth at 20 C.F.R. § 416.920.  The claimant has the burden at the first four steps.  The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy, but the burden of proving disability is always on the claimant. *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2007).  Section 405(g) limits the scope of the Court's

3

review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

      The ALJ analyzed Plaintiff's claims using the familiar five-step process.

*Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008)

(detailing the five steps).  At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since January 27, 2017, the application date.  Tr. at 17.  The

ALJ concluded at step two that Plaintiff's peripheral neuropathy, asthma, obesity, major

depressive disorder, anxiety disorder, and bipolar disorder were severe impairments.

Tr. at 17.  At step three, he concluded that Plaintiff did not have an impairment or

combination of impairments which met or equaled the Listings, giving special

consideration to Listing 3.03 (Asthma), Listing 11.14 (Peripheral Neuropathy), Listing

12.04 (Depressive, Bipolar and Related Disorders), Listing 12.06 (Anxiety and

Obsessive-Compulsive Disorders), and SSR 02-1p (Evaluation of Obesity).  Tr. at 17-

18.


      The ALJ found that Plaintiff retained the RFC to perform light work

as defined by 20 C.F.R. § 416.967(b), except that she required:  a sit/stand option at will

while remaining on-task; no more than occasional stooping, kneeling, crouching,

crawling, and climbing ramps or stairs; no work at unprotected heights or with ladders,

ropes, or scaffolds; no concentrated exposure to dust, fumes, gases, and other

pulmonary irritants; a low-stress work environment defined as having simple routine

tasks, basic work-related decisions, rare changes in workplace setting, occasional

interaction with the public limited to superficial interaction only, and frequent interaction

with coworkers and supervisors.  Tr. at 19.

At step four, the ALJ determined that Plaintiff could no longer perform her past work as a manager trainee, cashier, and store clerk.  Tr. at 26-27.  Relying on the VE's testimony, the ALJ found at step five that Plaintiff could perform work existing in significant numbers in the national economy, including work as a garment bagger, an office helper, and a marker.  Tr. at 27-28.  Accordingly, the ALJ determined that Plaintiff had not been under a disability since filing her SSI application in January 2017.  Tr. at 28.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 10, 11.  Plaintiff argues that the ALJ improperly weighed various medical opinions, and because he gave those opinions little weight, created a gap in the record and improperly relied on his "own lay interpretation of raw medical data" in formulating the RFC.  Dkt. No. 10-1, pp. 14-30.  The Commissioner counters that the ALJ properly weighed the medical opinion evidence relating to Plaintiff's physical and mental limitations, giving deference to Plaintiff's subjective complaints, and that there was sufficient evidence in the record for the ALJ to determine her RFC.  Dkt. No. 11-1, pp. 12-24.  Having reviewed the record in its entirety, this Court finds that the ALJ's decision is supported by substantial evidence and free from legal error.

**The Medical Opinion Evidence**

On August 8, 2018, Plaintiff saw Dr. Balvinder Kang at BryLin Behavioral Health Center for medication management after Plaintiff's previous provider left the clinic.  Tr. at 413.  Plaintiff had gained 25 pounds in two years but had no other side

6

effects.  Tr. at 413.  She denied feeling depressed or suicidal and reported that

Cymbalta helped with her neuropathic pain.  Tr. at 413.  A mental status examination

showed a euthymic mood, appropriate affect, good concentration, good memory, good

insight, and good judgment.  Tr. at 414.  Dr. Kang continued Plaintiff's medication

regimen with no changes.  Tr. at 414.

In connection with her application for SSI, Plaintiff attended an internal

medicine examination with Nikita Dave, M.D., on April 7, 2017.  Tr. at 374.  Plaintiff

reported symptoms of numbness, tingling, and burning in her feet for about 10 years.

Tr. at 374.  She said she was diagnosed with peripheral neuropathy in 2010, but had

not followed up with a neurologist since that time.  Tr. at 374.  She also reported a

history of asthma with no flare-ups for about five years.  Tr. at 374.  Plaintiff lived with

her boyfriend, two children, and grandfather.  Tr. at 375.  She performed activities of

daily living as needed and enjoyed watching television, listening to the radio, and

reading. Tr. at 375.  Upon examination, Plaintiff had a normal gait and stance with no

assistive device.  Tr. at 375.  She could squat 75% of full, walk on her heels and toes

without difficulty, climb on an off the examination table without assistance, and rise from

a chair without difficulty.  Tr. at 375.  She had full ranges of motion in her spine, arms,

and legs; slightly decreased sensation in her feet; full (5/5) strength in her arms and

legs; and intact hand and finger dexterity.  Tr. at 376.

Dr. Dave opined that Plaintiff had moderate limitations for prolonged

standing and walking due to the neuropathy affecting her feet.  Tr. at 377.  Dr. Dave

advised that Plaintiff should avoid ladders, heights, sharp dangerous equipment, and

machinery, as well as smoke, dust, fumes, inhalants, chemicals, extremes of temperature, and environmental allergens such as animals due to asthma/allergies.  Tr. at 377.

The same day, Plaintiff attended a psychiatric evaluation with Janine Ippolito, Psy.D.  Tr. at 368.  She reported a history of depression and anxiety with a suicide attempt in June 2016.  Tr. at 368.  She said her mental health treatment at BryLin helped manage her symptoms.  Tr. at 368.  She reported that she stopped working in 2006 and was unable to work due to nerve pain.  Tr. at 368.  She lived with her fiancé, children (ages 10 and 3), and grandfather.  Tr. at 368.  She was able to cook, clean, do laundry, drive, go grocery shopping, provide childcare, and care for her personal hygiene independently.  Tr. at 370-71.  She socialized rarely and spent a typical day taking care of her children, cooking meals, doing household chores, watching television, reading, and coloring.  Tr. at 371.

A mental status examination showed adequate social skills, good hygiene and grooming, normal motor behavior, and appropriate eye contact.  Tr. at 369.  Plaintiff had normal speech and thought processes, restricted affect, intact attention and concentration, mildly impaired memory, average intellectual functioning, and good insight and judgment.  Tr. at 370.  She reported feeling anxious.  Tr. at 370.  Dr. Ippolito found no evidence of limitation in Plaintiff's abilities to understand, remember, or apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; sustain an ordinary routine and regular attendance at work;

maintain personal hygiene and appropriate attire; and demonstrate awareness of normal hazards and take appropriate precautions.  Tr. at 371.

Dr. Ippolito opined that, due to emotional distress, Plaintiff had mild limitations in her ability to sustain concentration and perform a task at a consistent pace and moderate limitations in her abilities to interact adequately with supervisors, coworkers, and the public and regulate emotions, control behavior, and maintain her well-being.  Tr. at 371.  Dr. Ippolito concluded that Plaintiff's psychiatric problems did not appear to be significant enough to interfere with the ability to function on a daily basis.  Tr. at 371.

On April 17, 2017, state agency psychiatric consultant A. Dipeolu, Ph.D., reviewed the record and opined that Plaintiff's mental impairments were non-severe considering her current level of functioning.  Tr. at 85, 380-82.  The following day, state agency medical consultant, R. Dickerson, M.D., reviewed the record and opined that Plaintiff could perform at least medium exertion work but should avoid hazards and environmental irritants due to neuropathy and asthma.  Tr. at 87-88, 383-85.

On October 10, 2018, Dr. Kang completed a mental RFC questionnaire. Tr. at 544-48.  He indicated that Plaintiff took Cymbalta for recurrent episodes of severe depression and chronic anxiety.  Tr. at 544.  He checked boxes to indicate that Plaintiff had little to no limitation in her abilities to remember work like procedures; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine; ask simple questions or request assistance; be aware of normal hazards and take

appropriate precautions; interact appropriately with the public; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness.  Tr. at 546-47.  Dr. Kang checked boxes to indicate that Plaintiff had "limited but satisfactory" abilities to maintain attention for two-hour segments; maintain regular attendance and be punctual; work in coordination with others; make simple work-related decisions; complete a normal work-day without interruptions from psychologically based symptoms; perform at a consistent pace; accept instruction and respond appropriately to criticism; get along with coworkers; and respond appropriately to changes in a routine work setting.  Tr. at 546.  He further indicated that Plaintiff was "seriously limited" in her ability to deal with normal work stress.  Tr. at 546.  Dr. Kang asserted that Plaintiff would likely miss more than four days of work per month and could not engage in full-time competitive employment on a sustained basis.  Tr. at 548.  Dr. Kang stated that these limitations applied since August 8, 2018, two months prior, the first time he examined Plaintiff.  Tr. at 548.

**The ALJ's Evaluation of the Medical Evidence**

Plaintiff contends that the ALJ improperly gave limited weight to the treating opinion of Dr. Kang, and gave little weight to consultative opinions of Dr. Ippolito and Dr. Dipeolu, and improperly cherry-picked portions of Dr. Kang's opinion while ignoring others.  Dkt. No. 10-1, p. 14.  Plaintiff argues that because the ALJ "rejected all of the medical opinion evidence and the record contained no other useful functional assessment of Plaintiff's mental impairments, the ALJ clearly relied on raw medical data in assessing the mental RFC."  Dkt. No. 10-1, p. 14.  Plaintiff contends that the ALJ also "cherry-picked" from the opinion of Dr. Dave regarding Plaintiff's physical abilities.  Dkt.

No. 10-1, p. 28-29.  This Court does not agree that the ALJ's assessment of the opinion evidence constitutes reversible error.

As an initial matter, an ALJ must consider all of the relevant evidence in the case record, not just the opinion evidence, in reaching a claimant's RFC.  20 C.F.R. §§ 416.945 (a); 416.927 (d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.").  Provided that it is supported by record evidence, an ALJ's RFC determination need not "perfectly correspond" with any of the medical source opinions cited in his or her decision.  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) (stating "the fact that a residual functional capacity assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the residual functional capacity assessment is just made up") (internal citation omitted).

Consistent with this reasoning, the Second Circuit Court of Appeals has affirmed RFC determinations where the ALJ rejected a treating source's opinion or where the record contains no functional assessment, provided the RFC is otherwise supported by the record.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (holding that even after the ALJ discounted a treating source opinion, remand to secure another medical source statement was not required, where the record contained sufficient evidence from which the ALJ could assess the residual functional capacity, including treating psychiatrist's years' worth of treatment notes and evidence

of [claimant's] varied social and recreational activities); *Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541, 542 (2d Cir. 2011) ("Although the ALJ has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . the ALJ need not involve medical sources or claimant's counsel in his deliberative process or assessment of the evidence.").

In this case, the ALJ assessed an RFC that was consistent with the record as a whole, including the medical opinion evidence and Plaintiff's alleged limitations.  Tr. at 19-26.  After considering all the evidence, the ALJ gave little weight to the opinions of psychological examiner Dr. Ippolito and state agency psychological consultant Dr. Dipeolu, who opined that Plaintiff had mild to no mental limitations.  He instead afforded extreme deference to Plaintiff's testimony and found her to be more limited in her mental abilities.  Tr. at 22-23, 85, 368-71, 380-82.  Further, the ALJ thoroughly considered the opinion of treating psychiatrist Dr. Kang, and gave significant weight to the portions of his opinion that were consistent with the record and little weight to those that were inconsistent with the other evidence.  Tr. at 23, 544-48.

With respect to Plaintiff's physical functioning, the ALJ considered the consultative examination of Dr. Dave and gave significant weight to the portions of her opinion that were consistent with the record and little weight to the portions that were not.  Tr. at 26, 374-77.  The ALJ accorded more weight to the opinion of state agency medical consultant Dr. Dickerson, but ultimately found greater restrictions based on Plaintiff's subjective reports.  Tr. at 26, 383-85.  While the ALJ did not adopt any one opinion, this was not erroneous.  The ALJ properly considered all of the opinions and

incorporated those limitations that were supported into the RFC finding.  *See Rodriguez v. Comm'r of Soc. Sec.*, No. 17-CV-6006-FPG, 2018 WL 4681624, at *7 (W.D.N.Y. Sept. 28, 2018) (holding that the ALJ did not err in weighing the various medical opinions where he "did not adopt any opinion in its entirety," but "several RFC findings were consistent with portions of each opinion").

**Mental Opinion Evidence**

Contrary to Plaintiff's argument, the ALJ did not "reject" all the opinion evidence related to her mental impairments.  Dkt. No. 10-1, pp. 14, 22.  Rather, the ALJ properly considered the opinions of Dr. Ippolito, Dr. Dipeolu, and Dr. Kang, gave them each at least some weight, and incorporated mental limitations in the RFC that were supported by the record.  Tr. at 19-23, 368-71, 380-82.  The ALJ discussed each medical opinion, set forth his reasoning for the weight afforded to each, and cited specific evidence in the record which supported his determination. Tr. at 22-23.  For example, the ALJ found Plaintiff capable of performing simple, routine tasks.  Tr. at 19. This was consistent with Dr. Ippolito's opinion that Plaintiff had no limitations in her ability to understand, remember, or apply simple directions and instructions and Dr. Dipeolu's opinion that she had only mild limitations in understanding, remembering, and applying information.  Tr. at 85, 371.  Likewise, consistent with Dr. Ippolito's opinion that Plaintiff had moderate limitations in her ability to interact adequately with others and Dr. Dipeolu's opinion that she had mild limitations in this area, the ALJ limited Plaintiff to occasional interaction with the public and no more than frequent interaction with coworkers and supervisors.  Tr. at 19, 85, 371.

Because these mental limitations are grounded in the medical
opinions, it cannot be said that the ALJ substituted his own judgment for that of the
medical professionals.  *See Rivera v. Berryhill*, No. 16-cv-6775L, 2018 WL 2253121, at
*3 (W.D.N.Y. May 17, 2018); *Genito v. Comm'r of Soc. Sec.*, No. 7:16-cv-0143 (GTS),
2017 WL 1318002, at *9 (N.D.N.Y. April 7, 2017) (observing that the ALJ did not
substitute his own opinion by weighing and choosing between the medical opinions
present in the record).

Moreover, the ALJ afforded extreme deference to Plaintiff's subjective
reports and incorporated greater mental limitations in the RFC than opined by Dr.
Ippolito or Dr. Dipeolu.  Tr. at 22-23, 85, 368-71, 380-82.  Where, as here, an ALJ
assesses a more restrictive RFC than the medical opinions of record based on the
Plaintiff's subjective complaints, there is no basis for a remand.  *See Baker o/b/o Baker
v. Berryhill*, No. 1:15-cv-00903-MAT, 2018 WL 1173782, *2 (W.D.N.Y. Mar. 6, 2018);
*Dougherty-Noteboom v. Berryhill*, No. 17-CV-00243-HBS, 2018 WL 3866671, at *10
(W.D.N.Y. Aug. 15, 2018) (holding that the ALJ's RFC assessment was not based on
the ALJ's lay opinion where it corresponded with the plaintiff's testimony and with an
expert medical source statement.)

Plaintiff claims that the ALJ did not articulate good reasons for giving little
weight to the "treating" opinion of Dr. Kang.  Dkt. No. 10-1, p. 18.  Although the ALJ
noted that Dr. Kang provided psychiatric treatment, Dr. Kang was not a "treating source"
whose opinion would be entitled to controlling weight under the regulations.  Controlling
weight may be given to an opinion from only a "treating source," a doctor who has had

an ongoing treatment relationship with the claimant such that the doctor has a "longitudinal picture" of the claimant's impairments.  *See* 20 C.F.R. § 416.927(c)(2).  The record is clear that Dr. Kang saw Plaintiff only once before he completed the functional questionnaire in October 2018.  Tr. at 413-15, 544-48.  Dr. Kang explicitly stated that the earliest date that his assessed limitations applied was August 8, 2018, the date of his first visit with Plaintiff.  Tr. at 548.  In this regard, Dr. Kang did not purport to have treated Plaintiff longer than two months before rendering an opinion as to her mental limitations.  Such a short treatment relationship does not entitle the doctor's opinion controlling weight.  *See Feliciano v. Berryhill*, No. 6:16-cv-06311(MAT), 2017 WL 3537130, at *3 (W.D.N.Y. Aug. 17, 2017) (finding no error in giving a psychiatrist's opinion little weight where the opinion was issued after only two visits and the doctor merely checked off boxes and provided little narrative); *Comins v. Astrue*, 374 F. App'x 147, 149 (2d Cir. 2010) (holding that the physician who saw claimant once did not have ongoing treatment relationship).

Regardless, the ALJ articulated good reasons for the weight given to the various portions of Dr. Kang's opinion.  Tr. at 23.  Notably, the ALJ gave significant weight to Dr. Kang's check-box opinions regarding "unlimited or very good" ability to understand, remember, and carry out very short and simple instructions; "limited but satisfactory" ability to get along with coworkers and respond appropriately to changes in a routine work setting; and "seriously limited" ability to deal with normal work stress.  Tr. at 23, 546-47.  Consistent with these findings, the ALJ limited Plaintiff to a low-stress work environment with simple and routine tasks, basic work-related decisions, rare

changes in workplace setting, and frequent interaction with coworkers and supervisors. Tr. at 19, 23.

As with the opinions of Drs. Ippolito and Dipeolu, the ALJ incorporated greater mental limitations than indicated by Dr. Kang based on Plaintiff's testimony regarding her ability to interact with the public.  Tr. at 23.  As previously noted, this is not improper.  The ALJ further considered but gave little weight to the remainder of Dr. Kang's opinion, which indicated that Plaintiff would be absent more than four days per month and could not engage in full-time competitive employment on a sustained basis. Tr. at 23, 548.  As the ALJ noted, Dr. Kang's opinion regarding Plaintiff's ability to work is a matter reserved to the Commissioner.  Tr. at 23-24; see 20 C.F.R. § 416.927(d) (holding that the ultimate finding of whether a claimant is disabled and cannot work is "reserved to the Commissioner."); *LaValley v. Colvin*, 672 F. App'x 129, 130 (2d Cir. 2017) ("However, whether LaValley qualifies as 'disabled' under the statute is a decision reserved to the Commissioner.").

Furthermore, the ALJ found that particular restrictions were based solely on Plaintiff's uncorroborated subjective reports and were in direct conflict with Dr. Kang's function-by-function assessment, Plaintiff's reported daily activities, and the fact that she had not required treatment for more than a year.  Tr. at 23; *see also* Tr. at 546 (Dr. Kang indicating that Plaintiff had a limited but satisfactory ability to maintain regular attendance and punctuality and to complete a normal workday and workweek).  These are all appropriate reasons for affording less weight to a limitation within an opinion. *See Gray v. Colvin*, No. 1:13-CV-00955 MAT, 2015 WL 5005755, at *5 (W.D.N.Y. Aug.

20, 2015) ("The ALJ was within his discretion to accept certain portions of [the treating physician]'s opinion, but reject those that were not supported by her own treatment notes or other substantial record evidence."); *Kelsey v. Comm'r Soc. Sec.*, 335 F. Supp. 3d 437, 443 (W.D.N.Y. 2018) ("It is an appropriate exercise of discretion for an ALJ to afford little weight to a medical opinion that is internally inconsistent.")

Plaintiff herself consistently reported that she was able to manage daily childcare, clean, cook, do laundry, shop, and tend to personal grooming and hygiene. Tr. at 19, 56-58, 215-19.  These activities suggest that she was able to sustain a daily routine over a prolonged period.  *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (holding that the ALJ appropriately declined to adopt the doctor's limitations where the claimant engaged in moderately complex tasks, including helping with the care of her grandchildren, using computers, and other daily activities); *see Williams v. Colvin*, No. 14-CV-947S, 2017 WL 3404759, at *6 (W.D.N.Y. Aug 9, 2017) ("[A]n ALJ may consider Plaintiff's daily activities, symptoms, and objective medical evidence together to determine whether a treating physician is credible.").

Lastly, the ALJ found that the limited mental health treatment record did not support Dr. Kang's opinion regarding Plaintiff's lack of ability to sustain work.  Tr. at 23.  As the ALJ discussed, Plaintiff made significant progress during her short period of mental treatment and was discharged from counseling, after reaching her goals, a year before Dr. Kang rendered his opinion.  Tr. at 23, 427.  Indeed, Dr. Kang's own treatment records indicate that Plaintiff's depression was in remission and contained little other

than benign clinical findings of "good" concentration, memory, insight, and judgment. Tr. at 22, 414.

Under the circumstances, it was appropriate for the ALJ to discount those aspects of Dr. Kang's opinion insofar as they were inconsistent with other substantial evidence. *See Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) ("Rejecting [doctor's] opinion here in favor of contrary evidence was a proper exercise of discretion."); *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (the court "accept[s] the weight assigned to inconsistent opinions as a proper exercise of the ALJ's discretion").

Plaintiff accuses the ALJ of "blatant improper cherry-picking" of Dr. Kang's opinion in order to support a finding of not disabled.  Dkt. No. 10-1, p. 19.  While it is true than an ALJ cannot selectively choose "only [those] portions of a medical opinion that support his determination, while ignoring others[,]" *Bohart v. Astrue*, No. 10-CV-6503, 2011 WL 2516413, at *5 (W.D.N.Y. June 23, 2011), the ALJ in this case did not ignore any portion of Dr. Kang's opinion.  Tr. at 23, 544-48.  Rather, the ALJ thoroughly discussed and evaluated every part of his opinion, accepting those portions that were supported by the record while declining to accept those that were not.  Tr. at 23. There is nothing improper in an ALJ evaluating and weighing evidence in this manner.  *See Pavia v. Colvin*, No. 6:14-cv-0679 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (*citing Veino v. Barnhart*, 312 F.3d 578, 588 (2d. Cir. 2002)).  In this Court's view, the ALJ conducted "a searching review of the record" and "the substance of the treating physician rule was not traversed." *Guerra v. Saul*, No. 18-2646- CV, 2019 WL 4897032,

at *1 (2d Cir. Oct. 4, 2019) (*quoting Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019)); *see also Sample v. Comm'r of Soc. Sec.*, No. 17-CV-635, 2019 WL 2464490, at *3-5 (W.D.N.Y. June 13, 2019) (upholding the ALJ's decision where "the record demonstrate[d] more than ample reasons for assigning little weight to [the treating physician's] opinion").

        This Court also finds that the ALJ had no obligation to contact Dr. Kang for clarification or solicit additional opinion evidence because the record was otherwise complete.  *See Morris v. Berryhill*, 721 F. App'x. 25, 28 (2d Cir. 2018) ("The duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with her own prior opinions and the rest of the record."); *Rusin v. Berryhill*, 726 F. App'x 837, 839-840 (2d Cir. 2018) (holding that the ALJ was under no obligation to recontact the treating source to resolve inconsistencies between the doctor's opinion and treatment notes where there were no obvious gaps in the administrative record and the ALJ possessed plaintiff's complete medical history); *Pellam v. Astrue*, 508 F. Appx 87, 90 (2d Cir. 2013) ("Therefore, even if the ALJ did not credit all of Dr. Dave's findings, Dave's medical opinion largely supported the ALJ's assessment of Pellam's residual functional capacity. Under these circumstances—especially considering that the ALJ also had all of the treatment notes from Pellam's treating physicians—we do not think that the ALJ had any further obligation to supplement the record by acquiring a medical source statement from one of the treating physicians.").

**Physical Opinion Evidence**

Plaintiff claims that the ALJ improperly cherry-picked and rejected the opinion of Dr. Dave, erred in giving greater weight to the non-examining opinion of Dr. Dickerson, and assessed physical limitations based on his own lay opinion.  Dkt. No. 10-1, pp. 29-30.  Again, this Court disagrees.  The ALJ properly considered Dr. Dave's consultative opinion and gave significant weight to the portions of that opinion that were consistent with the record and little weight to those that were not.  Tr. at 26, 374-77.  Specifically, the ALJ gave significant weight to Dr. Dave's recommendation to avoid certain environmental irritants given Plaintiff's history of asthma. Tr. at 26, 377.  But he gave little weight to Dr. Dave's opinion that Plaintiff had moderate limitations for prolonged standing and walking, because the record did not support those restrictions.  Tr. at 26, 377.  Indeed, as the ALJ discussed, Plaintiff had no treatment for any physical impairments during the alleged period of disability, her examinations revealed only "mild" neuropathy, and she reported that she went to the gym on a frequent basis and was training for a 5K race.  Tr. at 26, 269-73, 219, 437, 452, 459, 500.  This evidence contradicts Dr. Dave's assessment that Plaintiff had a moderate limitation for prolonged standing and walking.

Moreover, the ALJ's finding that Plaintiff could perform light work, which requires occasional walking and standing, was not inconsistent with a moderate limitation for prolonged standing and walking.  *See April B. v. Saul*, 2019 WL 4736243, *5 (N.D.N.Y. 2019) (holding that "moderate limitations in standing and walking are consistent with light work"); *Gerry v. Berryhill*, No. 17-CV-7371 (JS), 2019 WL 955157, *3 (E.D.N.Y. Feb. 26, 2019) (stating that "[c]ourts within this Circuit have held that

opinions of similar 'mild to moderate limitations' [for standing, walking, climbing, bending, lifting, carrying, and kneeling] support RFC findings that claimants are capable of 'light work'").  The ALJ also considered the opinion of state agency medical consultant Dr. Dickerson, who opined that Plaintiff could perform a full range of medium work, but the ALJ ultimately found greater restrictions based on Plaintiff's subjective reports.  Tr. at 26, 383-85.

Plaintiff argues that the ALJ's limitations in lifting and carrying and the inclusion of a sit/stand option were the ALJ's own lay interpretation of limited raw medical data.  Dkt. No. 10-1, pp. 29-30.  However, these limitations were clearly predicated on Plaintiff's own testimony and other evidence.  The ALJ specifically stated that, in assessing Plaintiff's RFC, he gave extreme deference to Plaintiff's subjective reports, including her testimony that she could sit for 30-minute intervals and stand or walk for 15- to 20-minute intervals.  Tr. at 20, 53.  Regarding the lifting and carrying limitation, Plaintiff testified that she could lift only about 10 pounds, but that she regularly lifted grocery bags and laundry.  Tr. at 20, 52.  Giving Plaintiff's testimony some deference, the ALJ found her more limited than Dr. Dickerson, who opined that Plaintiff could lift and carry up to 50 pounds occasionally.  Tr. at 20, 26.  Specifically, considering the record as a whole, including evidence of Plaintiff's daily activities and the fact that she had never been treated for a physical impairment during the relevant period, the ALJ determined that Plaintiff could lift and carry up to 20 pounds occasionally as required for light work.  Tr. at 19, 26.

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder *would have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis added).  This case does not present such a situation.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is hereby DENIED, the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:        Buffalo, New York
              August 23, 2021

                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**